UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO: 5:08-CV-125-DCK

| | |
|---|---|
| DIANNA JENKINS, | ) |
|                 Plaintiff, | ) |
| v. | ) |
| | )    ORDER |
| ALLIED INTERSTATE, INC., | ) |
|                 Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on the "Motion for Partial Judgment on the Pleadings" (Document No. 11) by Allied Interstate, Inc. ("Defendant"). The parties have consented to disposition by the Magistrate Judge, and this matter is ripe for review. Having carefully considered the record in this case, including the pleadings and the parties' briefs, the Court will **grant** the Defendant's motion and **remand** this case to state court for the following reasons:

**I. Background and Procedural History**

On October 24, 2008, Dianna Jenkins ("Plaintiff") brought this action against Defendant (a corporation doing business as a debt collector) in the Superior Court of Iredell County, North Carolina. In her Complaint, Plaintiff alleged that between July 1, 2008 and September, 2008, Defendant, without prior consent and using an autodialer, left at least seventeen (17) pre-recorded messages on Plaintiff's cell phone number 704-450-3423. (Document No. 1-3, ¶¶ 8-12). Plaintiff alleged that Defendant left seven prerecorded messages indicating "866-898-3993 and a representative will assist you. Again please call 866-898-3993" and ten prerecorded messages indicating "866-898-3993and a representative will assist you." (*Id*., ¶¶ 10, 11). Plaintiff alleges that

Defendant failed to disclose that these messages were from a debt collector and failed to use its state-registered business name at the beginning of the messages. (*Id.*, ¶¶ 14-15). Plaintiff asserts that she did not have an existing debt in collection. (*Id.* ¶ 16). In her Complaint, Plaintiff asserts that Defendant violated the Telephone Consumer Protection Act ("TCPA") at 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. 64.1200(b)(1). Plaintiff also alleges that these telephone calls and messages violated North Carolina General Statute § 58-70-110(1) and( 2), and North Carolina General Statute § 75-104(a). (Document No. 1-3, ¶ 1).

Based on the parties' diverse citizenship and the amount of damages demanded in the Complaint, Defendant removed the case to federal court based on diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[1] In its Amended Answer, Defendant admitted: 1) that it placed certain calls to telephone number 704-450-3423 during the period July 19, 2008 to September 22, 2008; 2) that it left prerecorded messages after some but not all of the calls; 3) that some or all of the calls were made by an automatic telephone dialing system; 4) that "the quoted language in Paragraph 10 of the Complaint is an accurate transcription of a portion of some of the Messages (except that Plaintiff has omitted the number "1" before the listed telephone number) but denies that Paragraph 10 contains an accurate transcription of the entirety of any of the Messages;" 5) that it did not have prior consent to call Plaintiff; and 6) it is unaware of any obligation owed or due or alleged to be owed or due from Plaintiff that Allied was in the process of collecting at the time of the

---

[1]Although federal courts do not have federal question jurisdiction over private TCPA claims, *see International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146. 1148 (4th Cir. 1997), numerous courts have held that diversity jurisdiction is available for TCPA actions, *see Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342 (2d Cir. 2006). The Court need not resolve this issue as Plaintiff's claims do not satisfy the amount in controversy.

incidents alleged in her Complaint. (Document No. 8, ¶¶ 8-16).

In its Amended Answer, Defendant asserts that it placed the calls by mistake and stopped placing the calls and messages to the phone number after Plaintiff notified Defendant that it was calling an incorrect number. (*Id.*, ¶¶ 8, 10, 11, 14-16, 19, 22, 25, 28, 31). Defendant denies that it failed to disclose that the communications were in reference to a debt or that it failed to identify the name under which it was registered to conduct business in North Carolina. (*Id.*, ¶¶ 14, 15). Defendant asserts nine affirmative defenses, including that the Plaintiff's state claims do not meet the statutory definitions under the relevant North Carolina statutes as a matter of law. Specifically, Defendant argues that Plaintiff is not a "consumer" within the meaning of North Carolina General Statute § 58-70-90 (governing collection of debts from debtors) and that Defendant is not a "telephone solicitor" within the meaning of North Carolina General Statute § 75-101 (governing telephone solicitations). (*Id.*, pp. 4-9).

After removal, Plaintiff and Defendant filed cross-motions for partial judgment on the pleadings. (Document Nos. 10-11). After the parties fully briefed these motions, the Court *sua sponte* directed the parties to file briefs addressing the issue of subject-matter jurisdiction. (Document No. 24, Order of August 7, 2009). The parties filed their jurisdictional briefs on August 27, 2009. (Document Nos. 26, 27).[2] Plaintiff indicates that her Complaint satisfies the amount in controversy for diversity jurisdiction. Defendant contends that Plaintiff's state claims fail as a matter of law, and that absent those claims, the Complaint does not satisfy the required amount in

---

[2] The parties are diverse. Plaintiff indicates she is a citizen of Iredell County, North Carolina (Document No. 26, p. 2). Defendant is a Minnesota corporation with its principal place of business in Columbus, Ohio. See 28 U.S.C. § 1332(c)(1) (2000) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.")

controversy. Hence, since dismissal of the state claims has jurisdictional implications, the undersigned will first consider the Defendant's motion to dismiss those claims.

## II. Standard of Review

Defendant's motion was filed after the Amended Answer, and thus, Defendant has brought a Rule 12(c) motion for judgment on the pleadings, rather than a pre-answer Rule 12(b)(6) motion to dismiss. The Fourth Circuit Court of Appeals has explained the procedural nature of this type of motion as follows:

> Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised "by motion for judgment on the pleadings" Fed.R.Civ.P.12(h)(2); see 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 at 514-15 (2d ed.1990). Therefore, as a matter of motions practice, the Defendants' motion should be viewed as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

When considering a Rule 12(c) motion for judgment on the pleadings that raises the defense of failure to state a claim upon which relief can be granted, federal courts "apply the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); and see, *Edwards*, 178 F.3d at 243 ("viewing the Defendants' motion as a Rule 12(c) motion does not have a practical effect upon our review, because we review the district court's dismissal de novo and in doing so apply the standard for a Rule 12(b)(6) motion"); *Schrader-Bridgeport Intern., Inc. v. Arvinmeritor, Inc.*, 2008 WL 977604, *10 (W.D.N.C. 2008) (discussing review of motions under Rule 12(c)).

Under the familiar standard of Rule 12(b)(6), the allegations of the Complaint "must be

enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). The United States Supreme Court recently explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* – U.S. – , 129 S.Ct. 1937, 1954 (2009). A Rule 12(b)(6) motion to dismiss does not resolve factual disputes and merely tests the sufficiency of the complaint. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.), *cert. denied*, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure § 1356 (1990). The court "should view the complaint in the light most favorable to the Plaintiff." *Mylan Labs, Inc. v. Matkar*, 7 F.3d 11130, 1134 (4th Cir. 1993). The court "must accept as true all of the factual allegations contained in the complaint," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002), but need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Eastern Shore Markets, Inc. v. J.D. Assoc. Long Term Disability Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. Analysis

#### A. Plaintiff's 1st and 2nd Causes of Action

In her first cause of action, Plaintiff asserts that the Defendant violated the TCPA by using an autodialer to call Plaintiff's cell phone without her express consent and by leaving prerecorded messages. In her second cause of action, Plaintiff alleges that Defendant failed to disclose its business name in these messages. The relevant portion of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful:

> (A) to make any call (other than a call made for emergency purposes or made with

> the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice – . . .
> > (iii) to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

Subsection (b)(3) of this federal statute provides a private right of action in state courts and allows individuals to "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation . . ." 42 U.S.C. § 227(b)(3)(B). If the court finds that a defendant has "wilfully or knowingly" violated this subsection of the TCPA, the court has discretion to increase the damages up to $1,500 for each violation. 42 U.S.C. § 227(b)(3)(C).

Calls erroneously made by a debt collector to an incorrect cell phone number are covered by this section of the TCPA. *See, e.g., Watson v. NCO Group, Inc.*, 462 F. Supp. 2d 641, 645 (E.D.Pa. 2006) (holding that autodialed debt-collection calls to an erroneous number were not subject to any exemption under the TCPA and that "a non-debtor's rights are in fact violated when he is subjected to repeated annoying and abusive debt collection calls"); *and see, Bonime v. Avayu*, 547 F. 3d 497 (2d Cir. 2008) ("Congress's stated purpose in enacting the TCPA was to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers.") (quoting S.Rep. No. 102-178, at 1 (1991), U.S.Code Cong. & Admin.News 1991, at 1968). Plaintiff's claims under the TCPA are the main basis for this action, and Defendant does not move for dismissal of these claims.[3]

---

[3] The parties do not discuss Count 2, which alleges violation of 47 C.F.R. 64.1200(b)(1). It provides that "all artificial or prerecorded messages shall: (1) at the beginning of the message, state clearly the identity of the business ... responsible for initiating the call." That regulation pertains to procedural and technical standards promulgated under 47 U.S.C. § 227(d)(3)(A), which does not provide a private right of action, but rather, allows states to bring an action

## B. Plaintiff's Third and Fourth Causes of Action

Plaintiff also seeks to recover statutory damages under several state laws for the same seventeen calls. However, Defendant contends that Plaintiff's claims under state law must be dismissed because those state statutes do not apply in the present circumstances. Plaintiff's third and fourth causes of action are brought under N.C.Gen.Stat. § 58-70-110(1) and (2) respectively. This statute protects "consumers" by prohibiting deceptive representations made by debt collection agencies and provides in relevant part:

> No collection agency shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following:
>
> (1) Communicating with the consumer other than in the name of the person making the communication, the collection agency and the person or business on whose behalf the collection agency is acting or to whom the debt is owed;
>
> (2) Failing to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector; provided, however, that this subdivision does not apply to a formal pleading made in connection with legal action...

Defendant points out that Plaintiff is not a "consumer" for purposes of the statute, which

---

enjoining violation of the regulations. See 47 U.S.C. 227(f)(1) (providing for "Actions by States"); and see, e.g., *Boydston v. Asset Acceptance LLC*, 496 F.Supp.2d 1101, 1105 (N.D.Cal. 2007) (explaining that there is no private right of action for violation of 47 C.F.R. 64.1200(b)). In any event, for purposes of determining the amount in controversy, the parties both calculate the alleged amount of damages under the TCPA on a per-call basis, and case precedent supports this approach. *See Charvat v. GVN Michigan,* 561 F.3d 623, 632 (6th Cir. 2000).

defines a "consumer" as "an individual, aggregation of individuals, corporation, company, association, or partnership that has incurred a debt or alleged debt." N.C. Gen. Stat. § 58-70-90(2). This statute provides protection for consumers who have actually incurred a debt or a disputed debt. As the United States District Court for the Middle District of North Carolina explained:

> Because of the presence of the term incurred . . ., the words alleged debt could not include an instance in which a debt collector mistakenly identified the person who owed it money or allegedly owed it money. The legislature chose not to use the words allegedly incurred. Thus, the language . . . does not evidence an intent by the legislature to provide protection for persons mistakenly thought to have been the one who incurred an obligation.

*Fisher v. Eastern Air Lines, Inc.*, 517 F. Supp. 672, 673 (M.D.N.C. 1981).

Thus, to be entitled to protection under the North Carolina statute prohibiting certain acts by debt collectors, the person must have had at least some connection with the underlying debt or alleged debt. *Id.* Plaintiff does not meet this criteria because, as both the Plaintiff and Defendant acknowledge, the Plaintiff had not actually incurred the debt that the Defendant sought to collect.[4] Moreover, the enforcement provision for this statute is found at N.C. Gen. Stat. § 58-70-130, which provides that "any collection agency which violates Part 3 of this Article with respect to any *debtor"* shall be liable to the debtor for damages. Hence, Plaintiff's third and fourth claims fail to state a claim for which relief may be granted, and dismissal is appropriate.

An additional ground for dismissal of Plaintiff's fourth cause of action is apparent from a careful reading of the Complaint. N.C.G.S. § 58-70-110(1). Very simply, Plaintiff does not allege

---

[4] In a debt collection case under a similar statute, the North Carolina Court of Appeals explained the threshold requirement that the Plaintiff be a "consumer" who has "incurred an obligation" that is a "debt." *Davis Lake Comm. Ass'n, Inc. v. Feldmann*, 138 N.C.App. 292, 295 (2000) (discussing Gen.Stat. § 75-50(1) which defines "consumer" as "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes").

that Defendant communicated in anyone else's name. In fact, Plaintiff alleges that seven prerecorded messages merely indicated "866-898-3993 and a representative will assist you. Again please call 866-898-3993" and that another ten prerecorded messages indicated "866-898-3993 and a representative will assist you." (*Id.*, ¶¶ 10, 11). Plaintiff's fourth cause of action fails to state a claim for which relief may be granted, and dismissal is appropriate.

### C. Plaintiff's Fifth Cause of Action

Plaintiff's fifth cause of action fares no better. At the time the Complaint was filed, N.C.G.S. § 75-104(a), as enacted in 2003, provided that:

> (a) Except as provided in this section, no person may use an automatic dialing and recorded message player to make an unsolicited telephone call.
> (b) Notwithstanding subsection (a) of this section, a person may use an automatic dialing and recorded message player to make an unsolicited telephone call only under one or more of the following circumstances:
>> (3) The unsolicited telephone call is in connection with an existing debt or contract for which payment or performance has not been completed at the time of the unsolicited telephone call.[5]

The parties agree that the Defendant is a debt collector and used an autodialer to call the Plaintiff's cellular telephone number in connection with a debt. Although the Defendant was calling the wrong person about the existing debt, the plain language of the statute does not recognize this

---

[5]Section (3) was amended on July 7, 2009 as follows:

> (3) The unsolicited telephone call is in connection with an existing debt or contract for which payment or performance has not been completed at the time of the unsolicited telephone call, and both of the following are satisfied:
>> a. No part of the call is used to make a telephone solicitation.
>> b. The person making the call clearly identifies the person's name and contact information and the nature of the unsolicited telephone call.

distinction.

The Senate Bill, now enacted as the statute at issue, was titled "An Act to Increase Protections for Telephone Subscribers who Wish to Stop Unwanted Telephone Solicitations and for Consumers who Enter into Telemarketing Transactions." S. 872, 2003 Leg. Sess. (NC 2003). Legislative history indicates that the North Carolina Senate intended this statute to protect telephone subscribers from calls by *telephone solicitors* rather than debt collectors. The statute specifically provides an exemption for debt collectors. Plaintiff acknowledges that the Defendant is a "debt collector" and not a "telephone solicitor." (Document No. 13, p. 7). While this Court recognizes (and sympathizes with) Plaintiff's frustration with receiving numerous erroneous phone calls, the North Carolina statute she cites does not apply in this situation.

Plaintiff seeks statutory damages for the fifth cause of action under the "enforcement" provision of N.C. Gen. Stat. § 75-105(b). Under this statute, two types of plaintiffs may bring suit for violation of N.C. Gen. Stat. § 75-104(a): (1) the Attorney General, or (2) "a telephone subscriber who has received a *telephone solicitation* from or on behalf of a *telephone solicitor*." N.C. Gen. Stat. § 75-105(a) and (b) (italic added). Plaintiff does not fit these criteria.

The statute defines "telephone solicitation" as:

> [a] voice communication, whether prerecorded, live, or a facsimile, over a telephone line or wireless telephone network . . . made by a telephone solicitor to a telephone subscriber for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods, or services; obtaining or providing information that will or may be used for that purpose; soliciting or encouraging a telephone subscriber's participation in any contest, sweepstakes, raffle, or lottery, whether legal or illegal; or obtaining a charitable donation.

N.C. Gen. Stat. § 75-101(9). As alleged in the Complaint, Defendant's messages did not attempt to

induce the sale of goods or services or otherwise solicit for purposes of this statute.

Similarly, a "telephone solicitor" is defined as "[a]ny individual, business establishment, business, or other legal entity doing business in this State that, directly or through salespersons or agents, makes or attempts to make telephone solicitations or causes telephone solicitations to be made," and includes "any party defined as a 'telemarketer' under the Telemarketing Sales Rule." N.C. Gen. Stat. § 75-101(10). By definition, Defendant is not a *telephone solicitor*, nor did the messages left on Plaintiff's cell phone amount to *telephone solicitation*s. See also, e.g., 68 FR 44144-01, 2003 WL 21713245 (F.R.), Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991 (indicating that "debt collection calls constitute neither telephone solicitations nor include unsolicited advertisements"). Under the relevant statutory definitions, Plaintiff is not entitled to bring a claim under N.C. Gen. Stat. § 75- 105 for the alleged violation of N.C. Gen. Stat. § 75-104(a). Plaintiff's fifth cause of action thus fails to state a claim for which relief may be granted, and dismissal is appropriate.

## IV. Remand

In seeking statutory damages under multiple statutes, the Plaintiff has asserted claims under both federal and state law. While the TCPA expressly provides that it does not pre-empt state law, (*see* 47 U.S.C. § 227(e)), the facts alleged by Plaintiff must still actually fit the criteria for those state statutes to apply. The facts alleged in Plaintiff's Complaint do not fit the relevant definitions, and thus, Plaintiff's state claims fail as a matter of law and must be dismissed.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). When a plaintiff is legally unable to recover the minimum jurisdictional amount by way of the damages claimed in the Complaint, the

Court lacks jurisdiction and must remand the case. *Wiggins v. North American Equitable Life Assur. Co.*, 644 F.2d 1014, 1017-1018 (4th Cir. 1981) ("If it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction.").

"[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *International Science,* 106 F.3d at 1146. Under Federal Rule of Civil Procedure 12(h)(3), "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1945 (2009) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). "[L]ack of the jurisdictional amount from the outset-although not recognized until later-is not a subsequent change that can be ignored." 1 *Moore's Federal Practice* ¶ 0.92[1] (2d ed.1993).

"The general federal rule has long been to decide what the amount in controversy is from the complaint itself . . . ." *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353 (1961) (citing *St. Paul Mercury Indemnity Co. v. Red Cob. Co.*, 303 U.S. 283, 288 (1938)). The amount in controversy is evaluated as of the time the Complaint is filed. *Griffin v. Red Run Lodge, Inc.*, 610 F.2d 1198, 1204-05 (4th Cir. 1979). If a plaintiff may not recover damages that meet the minimum jurisdictional amount, the district court does not have jurisdiction and must remand the case. *Wiggins v. North American Equitable Life Assur. Co.*, 644 F.2d 1014, 1018 (4th Cir. 1981).

Based upon the statutory damages demanded under all five counts in Plaintiff's Complaint (see Document No. 1-3, ¶¶ 20, 23, 26, 29, 32), the parties initially calculated the alleged amount in controversy as ranging from $86,700 up to a maximum of $136,000 for the seventeen telephone

calls. However, after carefully reviewing the pleadings, the relevant statutes, and the parties' arguments, the Court finds that Plaintiff, as a matter of "legal certainty," cannot recover this amount of alleged damages because the three state law claims (Counts 3-5) fail as a matter of law. Defendant correctly argues that if the state claims are dismissed, the amount in controversy would be below the requisite jurisdictional amount of $75,000.00. (Document No. 26, pp. 1, 4-5). Under Plaintiff's remaining TCPA claims, the range of possible statutory damages appears to be from $8,500 (minimum) to $25,500 (maximum), which is below the required threshold amount of $75,000. For purposes of determining the amount in controversy, the parties have both calculated the alleged amount of damages under the TCPA on a per-call basis, rather than per violation, and case precedent supports this approach. *See Charvat v. GVN Michigan,* 561 F.3d 623, 632 (6th Cir. 2000). As the jurisdictional amount under § 1332(a) cannot be satisfied, this case will be remanded to state court. Given the decision to remand, this Court lacks jurisdiction to proceed further, and thus, will not consider the Plaintiff's motion for judgment on the pleadings with respect to Count 1.

**IT IS, THEREFORE, ORDERED** that:

1) the Defendant's "Motion for Judgment on the Pleadings" (Document No. 11) is **GRANTED; Counts 3, 4, and 5** are dismissed; and

3) this case is **REMANDED** to state court.

**IT IS SO ORDERED**.

Signed: September 25, 2009

David C. Keesler
United States Magistrate Judge